UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CRYSTAL D. BOYD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 4:23-CV-535 PLC |
| MARTIN O'MALLEY[1], Commissioner of Social Security, | ) ) ) ) |
| Defendant, | ) ) |

**MEMORANDUM AND ORDER**

Plaintiff Crystal D. Boyd seeks review of the decision of Defendant Social Security Commissioner Martin O'Malley, denying her application for Disability Insurance Benefits (DIB) under the Social Security Act.  For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

I.   **Background and Procedural History**

On December 4, 2020, Plaintiff filed an application for DIB, alleging she was disabled as of April 1, 2020, due to depression, anxiety, migraines, memory loss, grief, diabetes, enlarged thyroid, and cataracts.  (Tr. 135, 261-262)  The Social Security Administration ("SSA") denied Plaintiff's claim initially in July 2021, and upon reconsideration in October 2021.  (Tr. 134-143, 144-153)  Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ").  (Tr. 171-172)  The SSA granted Plaintiff's request for review and conducted a hearing in April 2022.  (Tr. 76-103)

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the Defendant in this suit.  *See* 42 U.S.C. § 405(g).

1

In a decision dated May 3, 2022, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 1, 2020, through the date of this decision[.]" (Tr. 25)  Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review.  (Tr. 1-7)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ

Plaintiff, born March 27, 1973, testified that she lived in a house with her husband[2] and four-year old son. (Tr. 81-82)  Plaintiff completed her high school education. (Tr. 82)  Plaintiff testified that she no longer drove, as she had a hard time seeing at night since having eye surgery. (Tr. 81)

In her most recent position, Plaintiff worked as a patient registrar at the Phelps County Regional Medical Center.  (Tr. 82-83)  In that position Plaintiff lifted and carried a maximum of five pounds, and spent at least 80% of her time seated.  (Tr. 83)  Plaintiff held several other positions over the years, which required varying amounts of sitting, standing and lifting. (Tr. 83-85)

In response to the ALJ's question regarding why Plaintiff has been unable to work since April 1, 2020, Plaintiff testified as follows:  "I—my migraines.  I've been diagnosed with migraines, and they are severe.  I have to sleep these migraines off, and that's about two to three hours in order to get it under control.  Sometimes these migraines is (*sic)* so severe that I throw up with them, and I am sensitive to light, and I don't leave my home." (Tr. 85-86)  Plaintiff stated

---

[2] Plaintiff testified that her husband was disabled and did not work outside the home.  (Tr. 81)

2

that stress brings on her migraines, which she experienced four or five times a week. (Tr. 92)[3] Plaintiff testified that her medication helped when she was able to "sleep it off", but was otherwise ineffective. (Tr. 93) Plaintiff further stated that she experienced side effects from her medications, including memory loss and a feeling of being off-balance. (Tr. 88) She asserted she cannot focus or concentrate, sleep, leave her home or interact with others. (*Id.*)

With respect to household chores, Plaintiff testified that while she was able to make sandwiches for herself, her husband prepared larger meals, including those for her son. (Tr. 88-89) She said she needed her husband's help with showering and dressing, and did not mop, sweep, vacuum, wash dishes, do laundry or do yard work. (Tr. 89-90) Plaintiff explained that she spent her days watching movies with her son and reading to him, occasionally talking on the phone, and lying down or sleeping. (Tr. 91) She stated that she did not read for pleasure, and though she occasionally watched movies, she had difficulty following the plot and watching to the end. (Tr. 95-96)

A vocational expert also testified at the hearing. (Tr. 99-102) The ALJ asked the vocational expert to consider a hypothetical individual with the same age, education, and work experience as Plaintiff, with the following limitations:

> I'd like you to assume the individual can perform work at the sedentary exertional level, can occasionally climb ramps and stairs. Never climb ladders, ropes, or scaffolds. Occasionally balance, occasionally stoop, occasionally kneel, never crouch, occasionally crawl. Can never work at unprotected heights, can never operate hazardous machinery, can never be exposed to extreme cold, can never be exposed to concentrated levels of vibration, and can work in up to the moderate noise level. She's limited to simple routine tasks, can interact occasionally with supervisors, coworkers, and the public, and is limited—give me just a second—to simple, let's see, work-related decisions.

---

[3] Plaintiff stated that she had migraines five days per week that lasted four hours, and that on average one migraine per week was severe enough that it caused vomiting. (Tr. 98)

3

(Tr. 100-101)  The vocational expert opined that such an individual would not be able to perform Plaintiff's past work, but jobs existed in the national economy that such an individual could perform, such as final assembler, document preparer, and implant polisher.[4]  (Tr. 101)  The ALJ then changed the hypothetical, to specify an individual who would be absent from work four days each month, and/or off-task 25% in addition to normal breaks.  (Tr. 101-102)  The vocational expert responded that there would not be any work in the national economy for such an individual.  (*Id.*)

### III.     Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

---

[4] The vocational expert noted that all of her proposed jobs were classified as sedentary.  (Tr. 101)

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611.  At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in [§ 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611.  To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").  20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611.  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process.  20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1).  *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).  At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his or her past relevant work, the claimant is not disabled;

5

if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### IV. The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520 and found that Plaintiff: (1) had not engaged in substantial gainful activity since April 1, 2020, the alleged onset date; and (2) had the severe impairments of migraines, bilateral knee osteoarthritis, obesity, depression, and anxiety, that significantly limited her ability to perform basic work activities as required by SSR 85-28.[5] (Tr. 16)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-18) In so finding, the ALJ stated in relevant part as follows:

> There are no listing criteria for headaches. However, a primary headache disorder, alone or in combination with another impairment(s), could be

---

[5] The ALJ noted that Plaintiff had the non-severe impairment of diabetes mellitus. (Tr. 16)

6

> found to medically equal a listing. Epilepsy (listing 11.02) is the most closely analogous listed impairment for a medically determinable impairment (MDI) of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the undersigned must consider: a detailed description from a medical source of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)….Nevertheless, there is no evidence that the claimant's primary headache disorder medically equals a listing, either individually or in combination with another impairment.

(Tr. 16-17)

The ALJ further determined that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 20)

The ALJ next considered the medical opinions in the record. As relevant here, she concluded that Plaintiff's treating physician, Dr. Jennifer O'Malley's assessment was not persuasive, as follows:

> Finally, treating provider Jennifer O'Malley, M.D. reported that the claimant could carry out very short and simple instructions but was markedly limited in her ability to understand and remember very short and simple instructions. In addition, she said that the claimant was extremely limited in her ability to remember locations and work-like procedures, to maintain attention and concentration for extended periods, to perform activities within a schedule, to work in coordination with others, to complete a normal workday and workweek, to interact with the public and

7

> supervisors, and to respond to work setting changes (Ex. B8F). Dr. O'Malley's opinion is not supported by her own objective findings, as she generally reported that the claimant had normal behavior, thought content, mood, and judgment and did not appear nervous/anxious (Ex. B1F/24; B11F/9; B13F/9). In addition, the other evidence of record is not consistent with marked or extreme limitations in the claimant's mental functioning because other providers and a consultative examiner noted that the claimant made good eye contact, had normal insight and judgment, showed average intelligence, had grossly intact cognition, and had normal memory and concentration (Ex. B4F/6; B9F/3). Based on this analysis, the mental portion of Dr. O'Malley's assessment is not persuasive.
>
> Dr. O'Malley also said that the claimant could lift up to ten pounds, had postural limitations, could stand for less than two hours in a workday, would be off-task 25% of the workday, would miss more than four days of work per month, and was incapable of even low stress work (Ex. B8F). Dr. O'Malley's assessment is not fully supported by her own objective findings. For example, she generally noted that the claimant had negative straight leg raise testing, no lower extremity edema, and intact neurologic functioning (Ex. B11F/10). In addition, Dr. O'Malley noted that the claimant reported caring for her husband (Ex. B14F/2). Further, the other evidence of record is inconsistent with the restrictive limitations reported by Dr. O'Malley because a consultative examiner noted that the claimant had normal range of motion in the knees and upper extremities, intact sensation, and normal coordination, with an ability to handle items and rise from sitting (Ex. B9F/3-5). As such, the physical portion of Dr. O'Malley's opinion is also unpersuasive.

(Tr. 23-24)

After "careful consideration of the entire record," the ALJ determined that Plaintiff had the RFC to perform sedentary work, except that:

> [S]he can lift/carry ten pounds occasionally and less than ten pounds frequently. She can sit for six hours, stand for two hours, and walk for two hours in a workday. She can push/pull as much as she can lift/carry. The claimant can climb ramps and stairs occasionally. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, and crawl. She can never crouch. The claimant can never work at unprotected heights or with moving mechanical parts. She can never operate hazardous machinery. She can never work in extreme cold or near concentrated levels of vibration. She can tolerate moderate noise. The claimant is able to perform simple routine tasks, perform simple work-related decisions, and occasionally interact with supervisors, coworkers, and the public.

(Tr. 19) Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as final assembler,

8

document preparer, and implant polisher. (Tr. 25) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 1, 2020 through the date of the decision. (*Id.*)

### V.     Discussion

Plaintiff claims the ALJ erred by failing to (1) find that Plaintiff's migraines equaled one of the impairments in the Listings, and (2) properly consider Plaintiff's subjective statements concerning her migraines. (ECF No. 10) The Commissioner counters that (1) Plaintiff failed to meet her burden of showing that her headaches medically equaled the criteria of Listing 11.02B, and (2) the ALJ properly determined Plaintiff's RFC and articulated legitimate reasons for finding her subjective complaints were not entirely consistent with the evidence. (ECF No. 13)

#### A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id*. (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the

9

evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. Listing 11.02

Plaintiff argues the ALJ erred at step three of the sequential evaluation, because she failed to support her finding that there was no evidence Plaintiff's migraines equaled the impairment in Listing 11.02 (epilepsy). (ECF No. 10, PP. 6-9). Plaintiff maintains the failure necessitates remand, "so that the ALJ can provide further evaluation of whether Boyd's migraines equal listing 11.02." (*Id.*, P. 9, citing *Johnson v. Kijakazi*, 2023 WL 2662872, at *2 (E.D. Mo. Mar. 28, 2003)). The Commissioner counters the ALJ did not err at step three, because Plaintiff failed to submit a statement from a medical provider describing her headaches. (ECF No. 13, PP. 3-6)

"'Primary headache disorder[6] is not a listed impairment in the Listing of Impairments (listings); however, [the SSA] may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing.'" *Phillip v. Saul*, No. 8:19CV422, 2020 WL 4001162, at *18 (D. Neb. July 15, 2020) (quoting *Titles II and XVI: Evaluating Cases Involving Primary Headache Disorder,* Social Security Ruling ("SSR") 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019) (footnotes omitted)).

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI [medically determinable impairment] of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and [the SSA] may find that his or her MDI(s) medically equals the listing.

*Id.* (internal quotation marks and citation omitted).

---

[6] "Primary headache disorders are among the most common disorders of the nervous system. Examples of these disorders include migraine headaches, tension-type headaches, and cluster headaches." SSR 19-4p, 2019 WL 4169635, at *2 (footnote omitted).

10

Listing 11.02 provides in relevant part as follows:

11.02   Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:…

> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C);

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02 (effective Sept. 29, 2016).

SSR 19-4p provides specific guidance on how to evaluate headaches for equivalency to Listing 11.02, in relevant part as follows:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider:  A detailed description from an AMS[7] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7.

As noted above, the ALJ correctly recited the elements necessary to determine whether Plaintiff's primary headache disorder was equal in severity and duration to the criteria in 11.02B. (Tr. 16-17)  She further detailed the evidence in the record that supported Plaintiff's claim of disability.  For example, the ALJ noted that Plaintiff reported in an Adult Function Report that her migraines "kept her from 'doing everything[.]'" (Tr. 19, quoting Ex. B9E)  The ALJ stated that third parties reported Plaintiff suffered from multiple migraines per month, and "often had to

---

[7] "AMS" refers to an acceptable medical source.  SSR 19-4p, 2019 WL 4169635, at *2.

11

cancel plans due to headaches[.]" (*Id.*, citing Ex. B15E)[8]  With respect to Plaintiff's medical records, the ALJ stated in relevant part as follows:

> In February of 2020, the claimant reported that her symptoms were "much better." She reported a recent weeklong migraine, but she said that, after a recent medication change, she only had migraines "every once in a while" (Ex. B1F/16).[9]  In June of 2020, the claimant said that her migraines had begun getting worse about two months prior, though she noted that her medication worked if she was able to take it before her headache became severe….
>
> In December of 2020, the claimant said that her migraines were getting worse, noting that she had to stay in bed all the time because of them.  She reported three to four migraines per week, but she denied dizziness (Exh. B1F/22-23)….Upon examination, the claimant showed no focal neurologic deficits (Ex. B1F/24).  In May of 2021, the claimant had a follow-up appointment with her primary care doctor, where she reported…worsening migraines (Ex. B11F/7).  She said that she could not sleep due to severe pain, and she reported eye twitching (Ex. B11F/9)….In September of 2021, the claimant reported a headache that had lasted about three weeks (Ex. B13F/6)….In February of 2022, the claimant reported headaches that were so intense they made her eyes hurt.  In addition, she reported facial pain and increased weakness (Ex. B14F/9).

(Tr. 20-21)  Despite these findings, the ALJ concluded as follows with respect to Listing 11.02: "Nevertheless, there is no evidence that the claimant's primary headache disorder medically equals a listing, either individually or in combination with another impairment." (Tr. 17)

In her brief in support, Plaintiff references the same record evidence to support her claim that she suffers migraines at a frequency and duration consistent with that required by Listing 11.02B.  (ECF No. 10, P. 7)  For example, Plaintiff notes that she reported increasing frequency and intensity of her migraines to medical personnel on multiple occasions, and that her reports were corroborated by third parties, including her husband and a friend. (*Id.*, PP. 7-9)  Plaintiff

---

[8] Ms. Betty L. Boyd reported that Plaintiff suffered from multiple migraines each month.  (Tr. 380) Ms. Dee E. Brown reported there were occasions when Plaintiff had to cancel plans due to her migraines.  (Tr. 383)

[9] The Court notes the only time Plaintiff reported relief with respect to her migraine symptoms occurred prior to her alleged onset date of April 1, 2020.

12

states there is no indication in the record that she failed to comply with her prescribed treatment, and the record amply documents the ways in which her migraines limited her functioning. (*Id.*) Plaintiff concludes the ALJ "failed to support her finding that there was 'no evidence' that Boyd's migraines medically equaled listing 11.02 resulting in a decision that is not supported by substantial evidence." (*Id.*, P. 9)

In response, Defendant asserts Plaintiff failed to meet her burden of establishing that her impairment equaled Listing 11.02B, as she did not submit a statement from a medical provider describing her headaches. (ECF No. 13, P. 4, citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). Plaintiff conversely posits that in order to find Plaintiff suffered from a medically determinable primary headache disorder in the first instance, the ALJ necessarily considered a detailed statement from an acceptable medical source describing her headaches. (ECF No. 14, PP. 1-2, citing SSR 19-4p, 2019 WL 4169635, at *6)

Generally, "an ALJ's failure to adequately explain [her] factual findings is 'not a sufficient reason for setting aside an administrative finding[.]'" *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (quoting *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)). Likewise, "[t]here is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citations omitted). Remand is warranted, however, "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) (internal quotation marks and citation omitted).

Upon consideration, the Court finds the ALJ failed to support her finding that Plaintiff's impairment did not medically equal the severity of Listing 11.02B. Instead, after detailing the

13

record evidence supporting Plaintiff's claim, she summarily stated there was no evidence that Plaintiff's primary headache disorder medically equaled a listing. (Tr. 17) This failure "requires a finding that there is not substantial evidence to support the ALJ's general conclusion that Plaintiff does not have an impairment or combination of impairments that meets or equal the severity of one of the listed impairments." *Phillip*, 2020 WL 4001162, at *26 (internal quotation marks and citation omitted). The Court therefore remands this matter to the Commissioner, for further consideration of whether Plaintiff has an impairment that meets or equals the severity of one of the listed impairments.[10]

## VI. Conclusion

For the reasons discussed above,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of August, 2024.

---

[10] On remand, the ALJ may further articulate the reasoning behind her conclusion that Plaintiff's subjective complaints were not entirely consistent with the evidence of record.